In the Matter of STEPHEN A. GIEGER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 18, 1991

## APPEARANCES OF COUNSEL

*Hal R. Lieberman* for petitioner.

*Thomas P. Puccio* of counsel *(Milbank, Tweed, Hadley & McCloy,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Stephen A. Geiger was admitted to the practice of law in the State of New York by the Appellate Division,

Second Judicial Department, in June of 1970. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department.

On October 27, 1989, respondent was served with a notice and statement of charges asserting that he had violated Code of Professional Responsibility DR 1-102 (A) (4) and (6) by submitting false and fraudulent billings to clients over a 15-month period, overcharging them in the total amount of $54,544.33 in order to pay for his own personal expenses. In that regard, respondent, during the course of his employment in the New York office of a large firm which is based in Chicago, Illinois, billed to clients the cost of air travel to Europe, generally on the Concorde, for trips that were not work-related, as well as the price of luxury purchases, such as an antique magnifying glass, a pair of gold cuff links, an antique silver wine funnel, gold pens, an antique cushion, a rock crystal sphere, a golf bag and club covers and a porcelain object. This improper and fraudulent billing was effectuated as follows: Respondent would incur a personal expense by charging it to his credit card. He would then submit the amount involved to the firm for reimbursement. Finally, he would cause the expense to be billed to one of his clients by including the charge in one of the standard disbursement categories —for instance, filing fees. It is undisputed that respondent had clients billed for items for which he was not entitled to reimbursement.

However, while admitting the factual allegations against him, respondent has denied that he actually was aware at the time that he was engaged in professional misconduct and presented in mitigation evidence purporting to demonstrate that he was undergoing severe difficulties in his personal life, that his father had developed a serious illness and that he was afflicted by certain psychological and emotional problems, all of which factors supposedly combined to create a "confluence of pressures that became intense" during the relevant period. Yet, notwithstanding that the clients who were improperly billed were eventually repaid in full, it is clear that respondent's actions constituted an intentional and deliberate effort to steal, and, indeed, the defrauded clients only recovered their money after his misconduct was discovered; respondent certainly never meant to reimburse his clients for the amounts which he charged them to meet his own personal expenditures for a variety of luxury items. Moreover, at the time that he was engaged in his peculations, he was a highly

compensated partner of a major law firm and was scarcely suffering from any financial need. Despite the attempt by respondent to depict his transgressions as the consequence of his myriad psychological and personal problems, he has failed to establish any causal connection between his difficulties and the theft of money from clients. The fact is that every person is confronted with stress arising out of the complications of daily life, and the existence of personal problems, absent an extraordinary situation not here apparent, does not explain, much less justify, stealing money from clients.

This court has consistently held that, except under extremely unusual mitigating circumstances, the intentional conversion of funds belonging to a client or a third party is grave misconduct warranting the severe penalty of disbarment (*Matter of Schmidt,* 145 AD2d 103; *Matter of Pollack,* 142 AD2d 382; *Matter of Malatesta,* 124 AD2d 62). The instant proceeding simply does not present the sort of causal relationship between a mental or physical infirmity and the attorney's misfeasance that would justify that the particular factor in question be considered in mitigation of the sanction to be prescribed (*see, Matter of Winston,* 137 AD2d 385; *Matter of Driver,* 129 AD2d 119; *Matter of Levine,* 101 AD2d 49). Accordingly, the petition by the Departmental Disciplinary Committee should be granted to the extent of confirming the findings of the Hearing Panel, and the penalty of disbarment should be imposed.

Therefore, the petition by the Departmental Disciplinary Committee is granted to the extent of confirming the fact finding of the Hearing Panel, and respondent is disbarred from the practice of law and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately. Respondent's cross petition for a lesser sanction is denied.

SULLIVAN, J. P., MILONAS, ROSENBERGER, ASCH and SMITH, JJ., concur.

Petition granted only insofar as to confirm the Hearing Panel's findings of fact and conclusions of law, and respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective July 18, 1991, and respondent's cross petition requesting censure as the sanction to be imposed is denied.