[617 NYS2d 473]

In the Matter of JAMES J. PITTS (Admitted as JAMES JOHN PITTS), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 1, 1994

## APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent James J. Pitts was admitted to the practice of law in New York by the Second Judicial Department on August 3, 1983, under the name James John Pitts. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On or about January 20, 1993 and August 20, 1993, the Departmental Disciplinary Committee served respondent with a notice and statement of charges and supplementary charges, respectively. The charges allege that respondent is guilty of serious professional misconduct in connection with his improper transfer to his client of $55,000 which he held in escrow and which belonged to a third party, and his subsequent misrepresentations to that third party about the status of the funds. The supplementary charges allege further misconduct in that respondent intentionally converted $60,000 held by him in escrow, repeatedly wrote checks to cash on his escrow account, and lied to the depositor of the $60,000 and to the Committee about the status of the funds.

Respondent served answers to the charges generally denying all of the allegations.

A Hearing Panel convened to hear testimony and receive evidence on the charges on October 14 and 21, 1993. Respondent appeared *pro se* and testified extensively, both on his own behalf and as Staff's adverse witness. At the hearing the following facts were adduced and conclusions reached.

In April 1990 respondent was counsel for a corporation which undertook to procure "collateral from acceptable banks" for another corporation. By affidavit he represented to counsel for that second corporation that the corporation for which he was counsel (his corporation) held a collateral portfolio suitable for the second corporation and that he would act as escrow agent for the second corporation and would deposit $55,000 from the second corporation in his attorney's trust account; if the collateral commitment was not delivered within 10 days, the funds would be returned to the second corporation. Within three days after the second corporation's wire transfer of $55,000 to the escrow account, however, respondent transferred $54,000 out of the account without authorization from the corporation. He thereafter failed either to return the $55,000 or to deliver the promised bank paper despite repeated demands that he do so. He also misrepresented to counsel for the second corporation that the $55,000 had remained intact in the escrow account and that the promised bank paper would be obtained.

Five months after its wire transfer the second corporation commenced an action against respondent and his corporation in the United States District Court, District of Nevada, to recover the $55,000. Respondent defaulted. The court found

that respondent had converted the $55,000 to his own use and benefit and gave judgment against him in the amount of $55,000. On payment to plaintiff therein by respondent and his corporation of $82,034.28, the case was dismissed.

The Departmental Disciplinary Committee (DDC) charges respondent with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4) (Count One); failing to preserve the identity of trust funds, in violation of 22 NYCRR 603.15 (a) and (b) (now DR 9-102 [A], [B]) (Count Two); and engaging in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (subsequently DR 1-102 [A] [7], now DR 1-102 [A] [8]) (Count Three).

Six supplementary counts pertain to a similar "collateral commitment" arrangement pursuant to which one Richard B. wire-transferred $60,000 to respondent's escrow account, which respondent completely depleted by writing checks to "cash" and by making disbursements unrelated to Richard B. No portion of the $60,000 has been repaid. As a result of respondent's actions he was charged with converting the $60,000 escrow deposit to his own use and thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (Count One). For failing or refusing to repay the escrow funds despite demands for repayment and for thereafter falsely telling the Committee that the bank transaction was ongoing, respondent was charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (Count Two). Respondent was further charged with failing to preserve the identity of trust funds, in violation of DR 9-102 (A) and (B) (Count Three); failing to promptly pay to a third party, as requested by the third party, funds in the possession of respondent which the third party was entitled to receive, in violation of DR 9-102 (C) (4) (Count Four); repeatedly drafting checks to "cash" on his escrow account, in violation of DR 9-102 (E) (Count Five); and engaging in conduct which adversely reflected upon his fitness to practice law, in violation of DR 1-102 (A) (7) (Count Six).

Respondent claimed that the money he withdrew from the escrow account as "cash" went to obtain appropriate collateral. Respondent, however, presented no evidence supporting this claim. Respondent further admitted that he has not repaid Richard B., though claiming that Richard B. has no cause of action against him. Respondent also failed to produce

any of the documents known as "prime bank paper" or "collateral commitments" which he described as part of the transaction.

At the conclusion of the testimony, Staff Counsel recommended that respondent should be disbarred. Staff Counsel advised the Committee that respondent had received two Letters of Admonition, one dated November 22, 1988 and the other dated May 1, 1990. The Admonition dated November 22, 1988 concerned respondent's failure to properly maintain bank accounts and financial records and his failure to cooperate with the Departmental Disciplinary Committee in its investigation. The Admonition dated May 1, 1990 concerned respondent's neglect of a legal matter.

Respondent requested that a censure or a "reasonable suspension" be imposed.

On March 8, 1994, the Hearing Panel issued its written report recommending that respondent should be disbarred. The Panel sustained all of the charges and supplementary charges and found with respect to each of the matters that respondent engaged in completely fraudulent activity and that the entire arrangement was nothing more than an obvious criminal scam and noted that the respondent's testimony was fraught with meaningless obscure language and terms, and that his testimony amounted to nothing more than an exercise and double-talk, sprinkled with a large dose of arrogance.

With respect to the sanction to be imposed, the Hearing Panel concluded that in the absence of extremely unusual mitigating circumstances, the conversion of funds belonging to a client or third party constitutes grave misconduct warranting disbarment, that respondent offered nothing concrete in mitigation, and that his prior disciplinary history and current lack of awareness or remorse indicated that his continued practice of law constitutes an immediate threat to the public.

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report imposing the recommended sanction of disbarment, and directing respondent to make restitution to Richard B. pursuant to Judiciary Law § 90 (6-a).

Respondent was served with a copy of the Committee's petition by mail on April 19, 1994. To date, respondent has not interposed a response.

A review of the evidence presented to the Hearing Panel indicates that there is ample evidence to support the Hearing

Panel's finding that respondent is guilty of nine counts of serious professional misconduct. Specifically, respondent diverted the $55,000 escrow deposit to his own and/or his client's use, failed to repay the escrow funds despite repeated requests by the depositor, and falsely told the depositor that the funds had remained intact. In addition, respondent converted Richard B.'s $60,000 escrow deposit to his own use by taking part in a fraudulent scheme, failed to repay the escrow funds despite repeated demands by Richard B., drafted checks to "cash" on his own account, and falsely told the Disciplinary Committee that the bank transaction was ongoing.

Absent extremely unusual mitigating circumstances—and this Court agrees with the Panel that there are none here—this Court has consistently viewed conversion of funds belonging to a client or third party as grave misconduct warranting the severe penalty of disbarment. *(Matter of Stein,* 189 AD2d 128 [1st Dept 1993]; *Matter of Kurtz,* 174 AD2d 207 [1st Dept 1992]; *Matter of Gieger,* 170 AD2d 134 [1st Dept 1991]; *Matter of Malatesta,* 124 AD2d 62 [1st Dept 1987].) An attorney who misappropriates funds is presumptively unfit to practice law. *(Matter of Pressment,* 118 AD2d 270, 273 [1st Dept 1986], citing *Matter of Marks,* 72 AD2d 399, 401 [1st Dept 1980].)

Respondent failed to present a rational explanation of his diversion of funds and produced no documentation to support his claims. He showed no remorse. The Hearing Panel's recommended sanction of disbarment is in accord with recent precedent and is appropriate here. The Disciplinary Committee will be directed to notify the appropriate criminal authorities of respondent's misconduct if it has not already done so.

Accordingly, the DDC's petition to confirm the Hearing Panel's report is granted. Respondent should be disbarred. Respondent should be directed to make restitution to the depositor of the $60,000 involved in the supplementary charges pursuant to Judiciary Law § 90 (6-a).

CARRO, J. P., ROSENBERGER, KUPFERMAN, NARDELLI and TOM, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective December 1, 1994, as indicated.